[No. F039525. Fifth Dist. Jan. 21, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY FONSECA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III and IV of the Discussion.

**COUNSEL**

Richard Power, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Robert P. Whitlock and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CORNELL, J.—Appellant Anthony Fonseca was convicted of possession of an illegal weapon and aggravated assault, both while an inmate in a state prison. He appeals his conviction contending various instructional errors. He also claims there was not sufficient evidence adduced at trial to sustain his conviction on the assault charge. We do not agree with his contentions and will affirm the judgment. In affirming his conviction, we will hold that it is not error to give the modified version of CALJIC No. 2.11.5 where an unjoined coperpetrator testifies at trial.

## PROCEDURAL SUMMARY

On April 30, 2001, Fonseca was charged by information with one count of aggravated assault while an inmate in a state prison in felony violation of Penal Code section[1] 4501, and one count of unlawful possession of a weapon while an inmate in a state prison in felony violation of section 4502, subdivision (a). It was further alleged with respect to each count that Fonseca had been convicted of three prior serious or violent felonies within the meaning of the three strikes law. Fonseca was convicted following a nonbifurcated jury trial of both counts and the allegations of the strike priors were found true. He was sentenced on count 1 to a term of 25 years to life to be served consecutively to an unrelated term currently being served. A similar sentence on count 2 was stayed pursuant to section 654.

## FACTUAL SUMMARY

### I. *Facts Giving Rise to Assault and Weapon Possession Charges*

On December 18, 2000, Fonseca was an inmate at the California State Correctional Facility at Tehachapi, in Kern County. About 125 inmates from the general population were in yard 4B about 10:30 a.m. Correctional Officers Edmond Esparza and Thomas Boranda were standing on some steps near the chapel. Esparza noticed abrupt movement in a crowd of inmates. Three inmates broke out of the crowd. Two inmates were approaching the third making side-to-side slashing motions with their hands. The third inmate was in a crouched, defensive position. Esparza ordered the inmates in the yard to get down and the tower guard fired a .37-millimeter wooden block into the ground as a warning shot. At this point Esparza noticed that one of the two inmates who were advancing on the third had a weapon in his hand.

---

[1]All references to section numbers hereafter are to the Penal Code unless otherwise specified.

The two inmates that were advancing on the third were identified as Fonseca and an unjoined coperpetrator named Richard Nava. The third person, who was in a defensive position, was identified as inmate Rudy Villa. After the order to get down was given and the warning shot was fired, all of the inmates in the yard except Fonseca and Villa lay prone on the ground. The latter two initially crouched down but then got back up. They did not resume fighting. Esparza gave the order to get down again and Fonseca obeyed.

Esparza noted that Fonseca had dropped the weapon he had been holding and was trying to sweep it away from him. Fonseca eventually picked the weapon up and threw it a short distance. Esparza recovered the weapon, a shank or homemade knife, about 15 feet from where Fonseca was lying. As he did so, he noticed another, similar weapon lying on the ground another 20 feet away. Both shanks were seized.

Villa ran toward the guards, who initially tried to spray him with pepper spray. The guards then noticed Villa had blood on his face. Villa was later determined to have suffered a number of lacerations and puncture wounds on his neck, face and head. The shank that was identified as having been in Fonseca's hand appeared to have no blood on it, although Villa's wounds bled profusely.

## II. *Defense*

Fonseca testified that he was recruited to participate in the attack on Villa because he was affiliated with Nava by way of gang membership. He testified that his participation in the attack was basically limited to grabbing Villa by the collar and holding on, trying to "make it look[] good" until the guards reacted. Fonseca testified that someone else gave the shank to him shortly before the attack occurred. He further testified that his life would have been in danger had he refused to play a role in the attack. Fonseca denied inflicting any of Villa's wounds, intending to inflict wounds, or using the shank at all.

Nava testified for the defense. He testified that he was the sole attacker and that he held both shanks, one in each hand. Nava admitted he had been convicted of robbery in 1990, and of robbery, murder, and attempted murder in 1991. He testified he was currently serving a 139 years to life sentence. Nava further explained he was not charged because he was already serving a life sentence and there was no point in prosecuting him since any additional punishment would be meaningless. He speculated that Fonseca was prosecuted because Fonseca could be sentenced to additional time.

Villa also testified for the defense. He testified that he got attacked from the back and he did not know who the assailant was.

## III. *Jury Instructions*

Fonseca requested that the jury be instructed pursuant to CALJIC No. 4.40, threats and menace (duress.) The court rejected the instruction finding that the alleged threats against Fonseca were not immediate enough to warrant the instruction. Instruction pursuant to CALJIC No. 4.43, necessity, was neither requested nor given. Instruction pursuant to CALJIC No. 2.11.5, unjoined perpetrators of same crime, was given without objection by either party. Jury instruction on aiding and abetting was not requested or given.

### DISCUSSION

Fonseca raises four issues on appeal. First, he argues that the trial court committed prejudicial error by giving a jury instruction pursuant to CALJIC No. 2.11.5 in a case where the unjoined perpetrator of the same crime testified for the defense. The People concede the error but claim the error was harmless. Second, Fonseca contends that he was denied a fair trial when the trial court refused to give a jury instruction on the defenses of either duress or necessity. Third, he claims the court had a duty to give jury instructions on aiding and abetting sua sponte and the failure to do so was prejudicial. Fourth, Fonseca challenges his conviction on count 1, claiming there was not sufficient credible evidence that he committed an assault to sustain the conviction.

### I. *Jury Instruction Pursuant to CALJIC No. 2.11.5*

CALJIC No. 2.11.5 basically instructs juries not to speculate on the reasons why a coperpetrator may not have been prosecuted in the instant case. As set forth in the fifth edition, the instruction was worded as follows: " 'There has been evidence in this case indicating that a person other than defendant was or may have been involved in the crime for which the defendant is on trial. [¶] Do not discuss or give any consideration to why the other person is not being prosecuted in this trial or whether [he] [she] has been or will be prosecuted.' (CALJIC No. 2.11.5 (5th ed. 1988 bound vol.).)" (*People v. Williams* (1997) 16 Cal.4th 153, 225, fn. 5 [66 Cal.Rptr.2d 123, 940 P.2d 710].)

The Use Note to this instruction specifies that it is not to be given where the unjoined perpetrator of the same crime testifies for either side. A number of cases have held that it is error to employ this instruction under those

circumstances. (See, e.g., *People v. Lawley* (2002) 27 Cal.4th 102, 162-163 [115 Cal.Rptr.2d 614, 38 P.3d 461]; *People v. Cain* (1995) 10 Cal.4th 1, 34-35 [40 Cal.Rptr.2d 481, 892 P.2d 1224].)

In 1989 the California Supreme Court reviewed the 1988 instruction in the context of an allegation that the instruction tended to impede the defense that another person actually committed the crime for which the defendant was charged. In *People v. Farmer* (1989) 47 Cal.3d 888 [254 Cal.Rptr. 508, 765 P.2d 940], the Supreme Court held the 1988 instruction was not erroneous, however "the instruction would be more informative and might better deter speculation if it told the jury explicitly that its sole duty is to decide whether *this* defendant is guilty and that there are many reasons why someone who also appears to have been involved might not be a codefendant in this particular trial." (*Id.* at pp. 918-919, disapproved on other grounds in *People v. Waidla* (2000) 22 Cal.4th 690, 724, fn. 6 [94 Cal.Rptr.2d 396, 996 P.2d 46].) In response to this criticism, CALJIC No. 2.11.5 was amended to read as follows: "There has been evidence in this case indicating that a person other than defendant was or may have been involved in the crime for which the defendant is on trial. [¶] There may be many reasons why that person is not here on trial. Therefore, do not *discuss or give any consideration* as to why the other person is not being prosecuted in this trial or whether [he] [she] has been or will be prosecuted. Your [sole] duty is to decide whether the People have proved the guilt of [each] [the] defendant on trial." (CALJIC No. 2.11.5 (6th ed. 1996), italics added.)

To date, it appears that all published cases that have examined the issue of the propriety of CALJIC No. 2.11.5 in the context of the testifying unjoined coperpetrator have held that giving the 1988 version of the instruction is error. (See also *People v. Cox* (1991) 53 Cal.3d 618, 667 [280 Cal.Rptr. 692, 809 P.2d 351]; *People v. Carrera* (1989) 49 Cal.3d 291, 312-313 [261 Cal.Rptr. 348, 777 P.2d 121]; *People v. Sully* (1991) 53 Cal.3d 1195, 1218-1219 [283 Cal.Rptr. 144, 812 P.2d 163].) We can find no case that has examined whether it is error to give the 1996 instruction where an unjoined coperpetrator testifies at trial. We now undertake that analysis.

The purpose of CALJIC No. 2.11.5 " ' "is to discourage the jury from irrelevant speculation about the prosecution's reasons for not jointly prosecuting all those shown by the evidence to have participated in the perpetration of the charged offenses, and also to discourage speculation about the eventual fates of unjoined perpetrators. [Citation.]" ' " (*People v. Lawley, supra,* 27 Cal.4th at p. 162.) Fonseca claims that juries who receive any version of this instruction where an unjoined coperpetrator has testified will be mislead into disregarding relevant and admissible evidence of the moral

turpitude of coperpetrators and ignoring the biasing effects of agreements they may have made with prosecutors.

A rigid and isolated reading of the 1996 instruction seems to support this claim. If a jury were to give absolutely literal credence to the 1996 instruction that they not "discuss or give any consideration as to why the other person is not being prosecuted," it might feel it could not give consideration to admitted evidence that, for example, the witness had been granted immunity in exchange for testimony, since the grant of immunity was the reason the witness was not being prosecuted. Clearly, such an understanding would be erroneous since the evidence of the grant of immunity would be highly probative of witness bias and, therefore, admissible and appropriate for jury consideration. (Evid. Code, § 350; CALJIC No. 2.20 [believability of witnesses].)

■ However, " '[i]n determining whether an instruction interferes with the jury's consideration of evidence presented at trial, we must determine "what a reasonable juror could have understood the charge as meaning." [Citation.] While the initial focus is on the specific instruction challenged [citation], we must also review the instructions as a whole to see if the entire charge delivered a correct interpretation of the law. [Citation.]' " (*People v. Cox, supra*, 53 Cal.3d at p. 667.)

■ We think it is significant that no case we have examined, or that either party has cited, has concluded that jury instruction pursuant to either version of CALJIC No. 2.11.5 is prejudicial where an unjoined coperpetrator has testified. The Supreme Court in *Lawley* explained in the context of the 1988 instruction: " ' "When the instruction is given with the full panoply of witness credibility and accomplice instructions, as it was in this case, [jurors] will understand that although the separate prosecution or nonprosecution of coparticipants, and the reasons therefor, may not be considered on the issue of the charged defendant's guilt, a plea bargain or grant of immunity may be considered as evidence of interest or bias in assessing the credibility of prosecution witnesses. [Citation.]" ' " (*People v. Lawley, supra,* 27 Cal.4th at pp. 162-163.)

In essence, the Supreme Court has held that, in every case where the jury receives all otherwise appropriate general instructions regarding witness credibility, there can be no prejudice from jury instruction pursuant to CALJIC No. 2.11.5. In other words, the potentially prejudicial effect of this instruction in the context of the testifying unjoined coperpetrator lies not in the instruction itself, but in the rather remote possibility that the trial court would fail to give otherwise pertinent and required instructions on the issue

of witness credibility. (§ 1127; see also CJER Mandatory Criminal Jury Instructions Handbook (CJER, 11th ed. 2002) §§ 2.4, 2.96, pp. 13, 76.) There is no error in giving CALJIC No. 2.11.5 so long as a reasonable juror, considering the whole of his or her charge, would understand that evidence of criminal activity by a witness not being prosecuted in the current trial should be considered in assessing the witness's credibility. (*People v. Cain, supra,* 10 Cal.4th at p. 35.)

The choice of words, highlighted above in the italicized portion of the 1996 instruction (*ante,* p. 548), is something short of optimal. We think the 1996 instruction would get closer to the heart of the matter if, instead of the italicized words, the phrases "speculate upon" or "guess at," or words to that effect were substituted. We do feel, however, that the 1996 instruction sufficiently conveys the idea that the intent is only to prohibit idle speculation, not to prevent consideration of pertinent evidence. The 1996 instruction informs the jury that they are not to speculate as to the fate of the party not being prosecuted because any number of explanations not pertinent to the case at hand is possible. We conclude that the 1996 version of CALJIC No. 2.11.5 has removed any lingering possibility that a reasonable juror would misunderstand his or her duty to consider all relevant factors bearing on witness credibility. Therefore, we hold that CALJIC No. 2.11.5, in its 1996 version, is not erroneous when given in a trial where an unjoined coperpetrator testifies.

Even if we were to hold the 1996 instruction is still erroneous in the context of the testifying unjoined coperpetrator, the error in this case would be harmless beyond a reasonable doubt. Nava testified he was not being prosecuted because he was serving a life sentence. He also testified that he was unconcerned by any possibility of additional prosecution because no amount of additional punishment would make a difference in the term he was to serve. Fonseca claims that he was prejudiced because the jury was instructed not to consider important evidence of bias. Nava's testimony contradicted Fonseca's but it was exculpatory as to Fonseca's role in the attack. The jury had ample instruction to consider Nava's credibility and apparently did so because it did not give credence to Nava's testimony that he alone possessed the shanks and attacked Villa. If the jury had believed Nava, they would have acquitted Fonseca. There is no possibility the verdict would have been different had the jury believed Nava less. There is no possibility that withholding the instruction would have increased Nava's credibility and, therefore, there is no possibility giving it prejudiced Fonseca.

II.-IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 543.

## DISPOSITION

The judgment is affirmed.

Vartabedian, Acting P. J., and Levy, J., concurred.

A petition for a rehearing was denied February 7, 2003, and on January 24, 2003, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied April 16, 2003. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.