Filed 12/4/14  P. v. Parker CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>CHRIS PARKER,<br><br>　　　　Defendant and Appellant. | C068510<br><br>(Super. Ct. No. SF112938A) |

A jury found defendant Chris Parker forcibly raped and digitally penetrated an intoxicated female friend at a gathering of college students.  (Pen. Code, §§ 261, 264.1, 289; unless otherwise stated, statutory references that follow are to the Penal Code.)  On appeal from the conviction, defendant contends (1) the presence of a support person during the victim's testimony violated his Sixth Amendment right to confrontation; (2) the trial court erred in instructing the jury; (3) the trial court erred in denying his motion

for new trial; and (4) the cumulative effect of errors warrant reversal.  We affirm the judgment.

### FACTS AND PROCEEDINGS

Defendant was charged with forcible rape in concert with another, under section 264.1 (Count 1); two counts of rape of an intoxicated person under section 261, subdivision (a)(3) (Counts 3 and 6); penetration of an intoxicated person by a foreign object under section 289, subdivision (e) (Count 4); and two counts of forcible rape under section 261, subdivision (a)(2) (Counts 7 and 8).  Other counts were charged against codefendant Ramar Weldon only and/or were dismissed before trial.

Defendant and Weldon were jointly tried, but with separate juries.  Weldon's jury ultimately found him not guilty on several counts and failed to reach a verdict on two counts.  Weldon's case was reset for trial and is not at issue in this appeal.

Evidence adduced at trial showed that victim Rosa "Doe" (then age 19) and four of her girlfriends, drank alcohol with defendant (then age 20) and four other males at defendant's apartment on September 12, 2009.  The victim was a college student and knew defendant and Weldon because they attended the same college, but she never expressed any sexual interest in them.  The group played a drinking game.  The victim drank three or four double shots of vodka, got falling-down drunk and "goofy," and spent more than an hour in the bathroom, where she vomited several times and sat on the floor. Others, including defendant, came to the bathroom to check on her and offer her water and bread. Several people helped her move to a bed in the bedroom defendant shared with Weldon.  The victim vomited again, on the bed covers, which were removed.  A female friend stayed awhile with the victim, who kept moving and hit her head trying to get up.  When the victim settled down, the friend left on an errand.

Defendant and Weldon periodically checked on the victim in the bedroom.  The victim testified Weldon started kissing her.  He unbuttoned her pants, pulled them down,

2

put his fingers in her vagina, and orally copulated her. Defendant entered the room, removed the victim's pants, and had sexual intercourse with her, while Weldon tried to put his penis in her mouth. The victim did not participate and said, "no" and "stop," but she was too intoxicated to resist physically. Defendant left the room, then returned and had sex with her a second time. She told him to stop and tried to push him away, but he pulled her closer by her legs.

The victim testified it ended when she started screaming, though nobody entered the room in response. No witness testified about hearing screams, but there was music playing in the apartment, and defendant's jury heard that Weldon told the victim during a tape-recorded phone call that he stopped because the victim screamed for her ex-boyfriend.

The victim's friend returned from her errand and entered the bedroom to find the victim crying. The victim said, "They raped me." The victims' friends took her to a clinic and called police, who took her to a hospital for a sexual assault examination. The victim had a scratch on her shoulder and wrist, bruising to her left arm, redness on her chest, and a hickey on her neck. The emergency room doctor testified, using his records, that he examined the victim at 9:03 a.m. and noted bilateral purplish bruises of unknown origin on the victim's upper thighs. The doctor was asked if the bruises could have been created within a four-hour, six-hour, or 24-hour period before the examination. He answered yes to all three questions.

The victim's blood was tested about nine hours after she stopped drinking. A criminalist testified the victim's blood-alcohol level (BAC) at the time of the test was .02. The expert opined the BAC nine hours earlier would have been between .11 and .20, depending on whether the individual burned off alcohol at a faster or slower rate.

Five days later, the police recorded an interview with defendant, which was played for the jury. Defendant initially denied having sex with the victim but, after learning the police had listened in on a phone conversation between the victim and Weldon, defendant

3

admitted he had sex with her twice and put his finger in her vagina. Defendant said the victim and Weldon were kissing, defendant walked up to them, and the victim grabbed him by the neck and began kissing him. He claimed the victim "came onto us." He also said she was "just too drunk. Just couldn't talk," and was "just out of it."

The college's basketball coach testified as a defense witness; he coached both defendant and Weldon and considered them to be of good character.

Defendant testified at trial. He said he drank 10 to 15 shots of vodka that night. He went into his bedroom to get a cranberry juice from a refrigerator. The victim and Weldon were on the bed in the darkened room. Defendant went to the bed "to see what was going on." The victim reached up, grabbed his neck, and pulled him toward her. They kissed and "flirt[ed]," touching each other. Defendant testified the victim pulled her own pants down and pulled his penis toward her. He testified he did not recall if he had sex with her or digitally penetrated her, but he "probably" had sex and "might have" inserted his finger in her. She never told him to stop. He believed she acted of her own free will and did not think she was too intoxicated to consent. He believed Rosa's arm got bruised when her friend held her up and she stumbled on the way to the bathroom.

Weldon testified they were all intoxicated. He fell asleep next to the victim, and when he awoke, she leaned over and kissed him, and he kissed her back. She kept saying, "Put it in me, put it in me." At trial, Weldon denied any contact with her vagina. Weldon did not recall putting his penis near her face, but the victim may have grabbed his penis and brought it to her face. He testified the victim was aware of everything and never told him to stop. Later, Weldon was on the floor, looked up, and saw defendant on top of the victim. Weldon later saw the victim kissing a third male, Remy (Raymond) McAlister.

Weldon called McAlister as a defense witness. McAlister testified the victim seemed to come on to him earlier in the evening. On cross examination, McAlister

4

admitted he fondled the victim's breasts in the bedroom, and she was too intoxicated to consent, and he was charged with misdemeanor sexual battery for the incident.

In the prosecution's rebuttal case, the victim testified she was friends with Weldon, and they did not have sex. When he was kissing her, she was thinking she wanted him to stop, but she was unable to say it. One of the victim's female friends testified she did not see the victim flirt with defendant, Weldon, or McAlister that night, though the victim did compliment McAlister on his eyes.

The jury found defendant guilty of Counts 3 and 6 (rape of an intoxicated person), Count 4 (penetration with foreign object) and Count 8 (forcible rape). The jury found defendant not guilty on Count 1 (rape in concert). The jury was unable to reach a verdict on Count 7 (forcible rape as an alternative to Count 1), and Count 7 was dismissed.

The trial court denied defendant's motion for new trial, as we discuss *post*. The court sentenced defendant to a low prison term of three years on the Count 8 forcible rape and concurrent terms on Counts 3, 4, and 6.

DISCUSSION

I

*Support Person*

Defendant contends the presence of the support person at the witness stand during the victim's testimony violated his Sixth Amendment right to confrontation, because the trial court did not require the prosecutor to make a showing of necessity for the support person. As we explain, defendant forfeited this contention by failing to object in the trial court.

Section 868.5, subdivision (a), provides in part that "a prosecuting witness in a case involving a violation or attempted violation of [specified offenses including rape] . . . shall be entitled, for support, to the attendance of up to two persons of his or her own choosing, one of whom may be a witness, at the preliminary hearing and at the trial, or at

5

a juvenile court proceeding, during the testimony of the prosecuting witness. Only one of those support persons may accompany the witness to the witness stand, although the other may remain in the courtroom during the witness' testimony. . . ." The statute requires a showing of necessity only if the support person is also a trial witness. (§ 868.5, subd. (b) [requires evidence that the person's support is desired by and will be helpful to the prosecuting witness].) "Absent improper interference by the support person . . . no decision supports the proposition that . . . the support person's mere presence infringes [the defendant's] due process and confrontation clause rights." (*People v. Myles* (2012) 53 Cal.4th 1181, 1214 (*Myles*).)

The trial record shows only that, when the victim took the witness stand, the trial court instructed the jurors: "Perhaps, I don't know if we explained this before, ladies and gentlemen, a witness in some cases, and this is one of them, is entitled to have a support person sit with her. A support person is not supposed to say anything or do anything. She's just there for moral support. But the fact that the witness does nor does not have somebody here as a moral support should not in any way influence your decision. It's her right under the law to have a moral support person sit." Defendant did not object during trial, nor did he raise the issue in his motion for new trial. On appeal, defendant does not dispute the People's assertion that the support person in this case did not testify at trial, and therefore there was no statutory requirement for a showing of necessity.

Though not mentioned by the parties, the victim also had a support person at the witness stand at the preliminary hearing, with acquiescence by the same defense counsel, Joel Carash, who represented defendant at trial. The defense did not object to the support person. Rather, Mr. Carash stated: "Judge, my understanding based upon some earlier remarks that were not on the record, in discussions with Counsel, is that the victim advocate is in fact a disinterested person and not a relative or member of the family or close friend." The prosecutor confirmed that was correct.

6

On appeal, defendant argues the absence of a particularized showing that the victim needed the support person violated the confrontation clause. Defendant relies on *People v. Adams* (1993) 19 Cal.App.4th 412, which said the presence of a support person at the witness stand "has an effect on jury observation of demeanor," which is an aspect of the Sixth Amendment right to confrontation. (*Id.* at pp. 437, 441, 443.) *Adams* cited United States Supreme Court authority which did not involve support persons but rather the more problematic issue of allowing victims to avoid face-to-face confrontation with defendants by testifying behind screens or on closed circuit television. (*Maryland v. Craig* (1990) 497 U.S. 836 [111 L.Ed.2d 666] (*Craig*) [remand for case-specific finding of necessity for closed circuit television]; *Coy v. Iowa* (1988) 487 U.S. 1012 [101 L.Ed.2d 857] (*Coy*) [screen violated confrontation clause, remand for prejudice determination].) *Adams* concluded the confrontation clause required the trial court to demand a showing of need before allowing the victim's father, who, according to defendant, abused the victim, to go to the witness stand as the victim's support person. (*Id.* at pp. 443-444.)

However, the defendants in *Adams*, *Craig*, and *Coy* all raised their objections in the trial court. (*Craig, supra*, 497 U.S. at p. 842; *Coy, supra*, 487 U.S. at p. 1015; *Adams, supra*, 19 Cal.App.4th at p. 434.) Consequently, defendant cites no support for imposing a sua sponte duty on the trial court to require such a showing when there has been no objection by counsel for the defendant.

We agree with the People that defendant has forfeited his confrontation clause claim by failing to raise it in the trial court. (*Myles, supra*, 53 Cal.4th at p. 1214 [defendant forfeited constitutional claims by failing to object when the victim-witness advocate accompanied the witness to the witness stand]; *People v. Stevens* (2009) 47 Cal.4th 625, 641 [defendant forfeited any claim of error by failing to object to the support person's presence at trial]; *People v. Lord* (1994) 30 Cal.App.4th 1718, 1722 [absence of an objection deprived the trial court of the opportunity to correct any

7

procedural error and make an evidence-based finding that the prosecuting witness needed a support person].)

Defendant argues there is no forfeiture for several reasons. He maintains the confrontation clause imposes on the trial court a sua sponte duty to demand a showing of necessity. Defendant cites no supporting authority. He claims *Adams* and *Craig* "indicate[]" the court has a sua sponte duty to ensure that the requisite necessity exists. However, the defendants in those cases made appropriate objections in the trial court, and neither case imposed a sua sponte duty.

Defendant argues an objection would have been futile "in the face of the statute and lack of any fair opportunity to object to the abrupt procedure" without "alienat[ing] the jury." Defendant claims on appeal that the use of a support person was not discussed before the victim took the witness stand. However, the defense should not have been surprised at trial because, as indicated, the victim also used a support person when she testified at the preliminary hearing (with no objection by the defense), and defendant had the same defense counsel, Joel Carash, at both proceedings. Moreover, the lack of a statutory basis for the objection would not preclude an objection based on the confrontation clause.

Defendant argues the trial court has a sua sponte duty to ensure that minimum foundational evidentiary showings are met, and the proponent of evidence has the burden to make the foundational showing for admissibility. Aside from the fact that the presence of a support person is not evidence, even foundational evidentiary objections must be timely raised in the trial court. (Evid. Code, § 353.)

Defendant contends he did not invite error. He also claims the law is unsettled as to whether a showing of necessity is required. Neither point excuses the failure to object.

We conclude defendant forfeited any constitutional challenge to the presence of the support person at the witness stand.

8

## II

### *Response to Jury's Questions*

Defendant maintains the trial court prejudicially erred in responding to the jury's questions about lesser offenses during deliberations.  We disagree.

### *Background*

The jury instructions on all counts listed the four elements by number, and then included unnumbered paragraphs addressing the defense of consent and reasonable belief in consent.  The trial court instructed the jury on simple assault and battery as "lesser crime[s]."  The court also gave an instruction labeled "DELIBERATIONS AND COMPLETION OF VERDICT FORMS," stating:  "If all of you find that the defendant is not guilty of a greater charged crime, you may find him guilty of a lesser crime if you are convinced beyond a reasonable doubt that the defendant is guilty of that lesser crime.  A defendant may not be convicted of both a greater and lesser crime for the same conduct. . . . [¶]  It is up to you to decide the order in which you consider each crime and the relevant evidence, but I can accept a verdict of guilty of a lesser crime only if you have found the defendant not guilty of the corresponding greater crime."  The court instructed the jurors that if they could not agree whether the prosecution proved defendant guilty of the greater crime, they should inform the court and not sign any verdict for that count.

During deliberations, the jury asked the court, "If on charges 3 & 6 & 4 [rape and digital penetration of intoxicated person] we agree that elements 1, 2, 3, & 4 are true can we find him guilty of a lesser charge instead of rape of an intoxicated person?"

Outside the jury's presence, the trial court interpreted the question as one of jury nullification and said it would answer "no."  The defense objected that a negative answer would be misleading, because it ignored the consent defense.  The prosecutor expressed concern that the court not inject itself into jury deliberations.

9

The trial court told the jury, "the answer to your question is 'No.' However, it is very important that you not single out just part of an instruction and ignore the rest. It's very important you take the instruction as a whole. [¶] So on each of those charges . . . the specific instruction to each of those three charges is about three or four pages long. It's very important that you look at the entire instruction and, of course, consider in view of all the other instructions, the entire instruction the Court gave you. So don't just single out part of the instruction, look at the entire instruction before making up your mind."

The jury foreperson interjected: "I have an additional clarification. Can the jury consider at the same time two separate possible charges for the same event? Example: Consider, for instance, if the defendant is guilty of rape by force or assault, or should we consider and reach a decision on rape by force, then if determined not guilty, then consider if he's guilty of assault."

The question led to this colloquy:

"THE COURT: Yes. You are referring to the lesser crimes.

"JUROR NO. 10: Correct. My understanding of reading it is we all have to be in agreement that the greater charge is not guilty [and] then consider the lesser charge.

"THE COURT: You have got it exactly right. . . . In order to find the defendant guilty of a lesser-included offense, you have to unanimously agree that the defendant is not guilty of the greater or charged offense. If you were unable to make a decision on that, then you have to follow the instructions. And so you are correct.

"JUROR No. 10: So again, further, we can't say on the four elements that you point out guilty on those, but then call it the lesser charge, because if he's guilty on those four he's guilty of whatever that charge, however that charge reads?

"THE COURT: If after looking at the entire instruction, based upon the entire instruction you find -- all twelve of you find beyond a reasonable doubt that he is guilty, then yeah, that speaks for itself.

10

"JUROR NO. 10: It's whatever that charge is. We can't say it's guilty, but we are going to say this other charge instead.

"JUROR NO. 10 [sic]: No. That's not it.

"THE COURT: Let me ask you, are you asking if you were to find a defendant guilty beyond a reasonable doubt, based upon all the evidence and all the instructions, can you nevertheless ignore that and still find -- still substitute a lesser charge for that, is that what you are asking?

"JUROR NO. 10: Yes.

"THE COURT: The answer to that is --

"JUROR NO. 10: Do those four elements apply to the lesser charge? . . .

"THE COURT: No. The lesser charge -- the lesser charges are as I defined, simple battery and simple assault.

"JUROR NO. 10: And have their own element[s]?

"THE COURT: And the only way you get to those is if based upon all the instructions and all the evidence, you first find the defendant is not guilty of the greater charge. You can't get to the lesser unless you find --

"JUROR NO. 10: Which has to be those elements?

"THE COURT: That's correct. The way the instruction reads, if you cannot agree on whether the defendant is guilty or not guilty of the greater charge, then you simply can't agree. That's all. You can never get to the lesser at that point. Okay. Does that make it clear?

"JUROR NO. 10: Yes."

The jury resumed deliberations.

### Analysis

Defendant argues the trial court's "no" answer to the jury's question was incorrect and misleading, because the jury could find the numbered elements proven yet still return

11

a verdict on a lesser offense based on the consent defense. Defendant complains the consent defense was "every bit as significant . . . as the numbered elements," yet the defense was not numbered.

However, the trial court told the jurors to consider the instructions as a whole, not simply the numbered elements. The court's answer was correct. In reviewing a claim that jury instructions were misleading, we ask whether there is a reasonable likelihood the jury misconstrued or misapplied the instructions in the manner asserted by the defendant. (*People v. Cross* (2008) 45 Cal.4th 58, 67-68.) We consider the instructions as a whole and presume the jurors are intelligent and capable of understanding and correlating the instructions. (*People v. Carey* (2007) 41 Cal.4th 109, 130.) There is no reasonable likelihood the jury disregarded the instructions on the consent defense.

Defendant thinks he showed at least one juror misunderstood the instructions in his motion for new trial. He submitted a declaration from a defense investigator, who said Juror No. 3 told him after the trial that she felt defendant was guilty of some sexually related crime but not rape; she felt the judge did not understand the question; and she voted guilty of rape only because the jury foreperson said the judge said they could find guilt or innocence only on the greater charge. However, the remarks attributed to Juror No. 3 were hearsay and were further inadmissible under Evidence Code section 1150, which provides in part: "No evidence is admissible to show the effect of [a] statement, conduct, condition, or event [of such character as is likely to have influenced the verdict improperly] upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined." The declaration is additionally suspect because it suggests that the court gave the answer only to the jury foreperson, whereas the court gave the answer in open court in the presence of all the jurors.

In denying defendant's motion for new trial, the trial court stated the investigator's declaration about the juror's remarks was hearsay, "and even if the Court were to

consider it, it would have to be done in proper form, even have the juror come in and testify or at least a sworn affidavit. But it wouldn't make any difference, because the only thing the juror is potentially saying here is that she felt that she misunderstood the instructions of the Court and that somehow the foreman was guilty of giving her some kind of wrong information. [¶] But that again does, as [the prosecutor] points out here, that relates to the juror's mental processes. And you cannot impeach the verdict based on jurors having buyer's remorse later on and being -- and now saying that she didn't understand the whole thing. There is nothing to indicate here that there was any coercion applied to her or that she didn't decide the case in the way she indicated she did when I polled the jury here. [¶] So even if this juror were to testify according to the declaration that was presented here, it would not be a basis for the Court granting a new trial. So the Court is not going to grant the new trial based on that."

On appeal, defendant does not defend admissibility of the declaration but instead says, "[a]dmissible or not," the juror information is disturbing. It is not, however, a ground for reversal of the judgment or the order denying a new trial.

As to the jury instructions on the order of considering the charges, defendant acknowledges the instructions properly informed the jurors, in accordance with *People v. Kurtzman* (1988) 46 Cal.3d 322, 330-331, that they could not return *verdicts* on lesser offenses absent a not-guilty verdict on the greater offense. Defendant nevertheless maintains the trial court violated *Kurtzman* by suggesting a not-guilty verdict must actually be returned before the jurors could *consider* a lesser offense. (*Id*. at pp. 329, 336.) However, in *Kurtzman* the trial court instructed the jurors they must agree on the greater offense before "considering" the lesser offense. (*Ibid*.) *People v. Riel* (2000) 22 Cal.4th 1153, 1200-1201, held there was no *Kurtzman* error where the trial court instructed the jurors that if they were not satisfied beyond a reasonable doubt that the defendant was guilty of the charged offense, they could convict him of the lesser. There

is no reversible error where there is no reasonable likelihood the jury misconstrued the instruction. (*People v. Dennis* (1998) 17 Cal.4th 468, 537.)

Defendant argues the jury could not understand the court's responses as anything but a direction for acquittal first on the greater offense before even deliberating on the lesser offenses. Defendant is wrong. The trial court expressly instructed the jurors: "It is up to you to decide the order in which you consider each crime and the relevant evidence." The jurors were merely prohibited from returning a verdict on the lesser crime unless they found the defendant not guilty of the greater crime. And, we note that, in the original instruction given to the jury on lesser and greater offenses, they were told that "[i]t is up to you to decide the order in which you *consider* each crime and the relevant evidence, but I can accept a verdict of guilty of a lesser crime only if you have found the defendant not guilty of the corresponding greater crime . . . "

There is no reasonable likelihood the jury misconstrued the instruction.

There was no error, and we therefore need not address defendant's prejudice argument. We nevertheless note defendant again argues he showed a juror was confused in connection with his motion for new trial. Again, the inadmissible declaration does not support reversal of the judgment or the order denying a new trial.

III

*Deadlocked Jury*

Defendant argues the trial court coerced a verdict by ordering further deliberations when the jury reported a deadlock. We disagree.

*Background*

The day after the exchange about lesser offenses, the jury reported it had reached some verdicts but was deadlocked on three counts, which led to the following exchange:

14

"THE COURT:  Okay.  As to the counts on which you have not been able to reach agreement, do you feel that any further instructions by the Court or anything else that we could possibly aid you with would help you to arrive at verdicts on those counts?

"JUROR NO. 10:  I don't think so, Your Honor.

"THE COURT:  Okay.  Does anybody on the jury feel differently than that? Anybody think that anything further would be helpful in allowing you to reach a verdict on the remaining counts?  Okay.  All right.  Let me see the attorneys here.  Well, before I do that . . . how many ballots have you taken on those remaining three counts, do you remember?

"JUROR NO. 10:  Many.  Several.

"THE COURT:  Have the numbers been changing at all? . . .

"JUROR NO. 10:  Yes.

"THE COURT:  Okay.  Have they been edging closer to an agreement or further away.  [¶] . . . [¶]

"JUROR NO. 10:  Closer to an agreement.

"THE COURT:  Well.  All right.  Say the last two ballots you have taken, have they changed at all or are the number still the same.

"JUROR NO. 10:  I think the last two were the same.  If it was changed, it was minor.

"THE COURT: . . .  But there is some change taking place, though?

"JUROR NO. 10:  Yes, but the final, when we couldn't get any further, we said 'Is anybody -- if we have more discussion, more stuff, is anybody going to change their vote?'  I think some of the people voting were starting to feel badgered and we didn't want to do that, so we just agreed that we weren't going to come to a unanimous conclusion."

15

The foreperson added, "We had one [count] that has been consistent, we had two [counts] then, but they were all moving toward one direction or another. Except one [count] looks like it was consistent."

After a bench conference, the trial court told the jurors: "As long as there is some change taking place, I don't want to pull the plug on this yet. So I would like you to go back to the jury room and see if there is any chance that there is going to be any change at all. I don't want to declare a mistrial unless there is absolutely no possibility of further change. So I'm going to ask you to go back to the jury room, discuss it again carefully, and then let us know. . . ."

The jury resumed deliberating. The trial court stated, "For the record, again, I want to say I called the attorneys up to bench and informed them as long as it appeared there was some possibility of change, the Court was not inclined to declare a mistrial. So that's the reason I sent them back." The court asked if counsel wanted to put anything on the record, and counsel said no.

About an hour later, the jury returned its verdicts.

In rejecting defendant's motion for new trial on the ground that the court coerced the verdicts, the trial court stated, "with regard to whether or not the Court was mistaken in the instruction that it gave the jury when they indicated they were deadlocked on some counts, and . . . I want to emphasize the jury did not indicate they were deadlocked on the other counts and they did return a verdict of guilty on Count 8. So it has to be presumed that they had already decided that count at the time that they considered the counts that they were still unable to reach a verdict on. So we have gone over this thing several times. There is no point in repeating it again. We have a transcript of it already. There will be a transcript of it for review by the appellate court."

16

*Analysis*

Under section 1140, "Except as provided by law, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, unless by consent of both parties, entered upon the minutes, or unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree."

"[The] determination whether there is reasonable probability of agreement rests in the sound discretion of the trial court. [Citation.] The court must exercise its power, however, without coercion of the jury, so as to avoid displacing the jury's independent judgment 'in favor of considerations of compromise and expediency.' [Citations.]" (*People v. Sheldon* (1989) 48 Cal.3d 935, 959 (*Sheldon*).) Whether coercion has occurred necessarily depends on the facts and circumstances of the case. (*People v. Sandoval* (1992) 4 Cal.4th 155, 195-196.)

Here, the trial court said nothing coercive.

Defendant argues the court's direction for further deliberations was coercive, because the foreperson said she thought some jurors were "starting to feel badgered" and there had been no significant movement "recently" despite many votes. However, the jury at that point had been deliberating for only two-and-a half days, and there had been movement. Jurors' opinions that further deliberations will not help does not necessarily render further deliberations coercive. (*Sandoval, supra*, 4 Cal.4th at pp. 196-197.) Moreover, we know that further deliberations did not coerce the jurors into reaching verdicts, because the jurors ultimately remained deadlocked on one count, resulting in a mistrial on that count.

Citing federal case law, defendant suggests the trial court was required to remind the jurors of their duty "not to surrender conscientiously held beliefs simply to secure a verdict." (*United States v. Mason* (9th Cir. 1981) 658 F.2d 1263, 1268; *Rodriguez v.*

*Marshall* (9th Cir. 1997) 125 F.3d 739, 750-751.) However, the federal courts require that instruction when needed to counteract an *Allen* instruction (*Allen v. U.S.* (1896) 164 U.S. 492 [41 L.Ed. 528]) stressing the importance of securing a verdict and asking the jurors to reconsider potentially unreasonable opinions. (*People v. Debose* (2014) 59 Cal.4th 177, 210.) Here the trial court did not give an *Allen* instruction.

We conclude the trial court did not coerce the verdict and did not abuse its discretion in directing the jury to resume deliberations or in denying defendant's motion for new trial.

IV

*CALCRIM NO. 373*

Witness McAlister, who testified on behalf of Weldon, admitted on cross-examination that he, McAlister, fondled the victim's breasts and kissed her, and he had been charged with misdemeanor sexual battery.

On appeal, defendant contends the trial court erred in instructing the jury, without objection, with CALCRIM No. 373, that "The evidence shows that another person may have been involved in the commission of the crimes charged against the defendant. There may be many reasons why someone who appears to have been involved might not be a codefendant in this particular trial. You must not speculate about whether that other person has been or will be prosecuted. Your duty is to decide whether the defendant on trial here committed the crimes charged."

Defendant argues the trial court prejudicially erred in failing to add that the instruction did not apply to other participants who testified at trial. According to defendant, the instruction chilled jury consideration of McAlister's motive to shade his testimony against defendant in order to curry favor with the prosecutor for McAlister's own case. Assuming for the sake of argument that defendant has not forfeited this contention by failing to raise it in the trial court, we reject the contention.

18

A prior version of this instruction -- the pre-2004 version of CALJIC No. 2.11.5 -- was held to be error when a person who might have been prosecuted for the charged crime testified at trial, because it chills jurors' consideration of significant accomplice witness bias going to credibility. (*People v. Hernandez* (2003) 30 Cal.4th 835, 875-876 (*Hernandez*), disapproved on other grounds in *People v. Riccardi* (2012) 54 Cal.4th 758.) Former CALJIC No. 2.11.5 used different language, directing jurors not to "discuss or give any consideration to" why others were not being prosecuted. The concern with that language was that it might improperly lead a jury to believe it could not consider the potential bias of a witness who was not being prosecuted because of a grant of immunity or plea bargain. (*People v. Fonseca* (2003) 105 Cal.App.4th 543, 549 (*Fonseca*).) *Hernandez* concluded the instruction should not be given when an apparent participant in the crime testified but accomplice instructions were not given. (*Hernandez, supra*, 30 Cal.4th at pp. 875-876.)

The People contend CALCRIM No. 373 corrected the problem by replacing the admonition not to "discuss or give any consideration to" language with an admonition not to "speculate" about the prosecution of other participants. The People cite no supporting authority. Instead, the Bench Notes to CALCRIM No. 373 state "If other alleged participants in the crime are testifying, this instruction should not be given or the bracketed portion [that the instruction does not apply to testimony of __] should be given exempting the testimony of those witnesses. [Citations.] It is not error to give the first paragraph of this instruction if a reasonable juror would understand from all the instructions that evidence of criminal activity by a witness not being prosecuted in the current trial should be considered in assessing the witness's credibility. [Citation.]" (Bench Notes to CALCRIM No. 373 (2014) pp. 141-142.)

The Bench Notes cite, among other cases, *Fonseca, supra*, 105 Cal.App.4th 543, which stated, "the Supreme Court has held that, in every case where the jury receives all otherwise appropriate general instructions regarding witness credibility, there can be no

19

prejudice from jury instruction pursuant to CALJIC No. 2.11.5.  In other words, the potentially prejudicial effect of this instruction in the context of the testifying unjoined coperpetrator lies not in the instruction itself, but in the rather remote possibility that the trial court would fail to give otherwise pertinent and required instructions on the issue of witness credibility.  [Citations.]  There is no error in giving CALJIC No. 2.11.5 so long as a reasonable juror, considering the whole of his or her charge, would understand that evidence of criminal activity by a witness not being prosecuted in the current trial should be considered in assessing the witness's credibility.  [Citation.]" (*Id*. at pp. 549-550.)

Here, the trial court gave full instructions on witness credibility.  Moreover, CALCRIM No. 373 did not hamper the jury's consideration of McAlister's bias or credibility.  The instruction is meant to stem speculation about why another participant is not being prosecuted.  Here, the jury learned that McAlister was being prosecuted for his conduct that night.  His potential bias was plain.  Contrary to defendant's implication, the jury's request for a read back of McAlister's testimony does not demonstrate or even support an inference that the jury misapplied the instruction.

Defendant suggests *Fonseca*'s blanket rule of harmlessness is contrary to *Hernandez*.  We disagree.  *Hernandez*, which involved questions of accomplice liability, said, "We have frequently said that a jury is not misled by this instruction [CALJIC No. 2.11.5] when the trial court gives the standard instructions on accomplice liability.  [Citations.]  Here, however, the court did not give those instructions." (*Hernandez*, *supra*, 30 Cal.4th at p. 877.)

Defendant fails to show reversible error regarding CALCRIM No. 373.

V

*Motion for New Trial*

Defendant argues the trial court erred in denying his motion for new trial.

20

"A trial court has broad discretion in ruling on a motion for a new trial, and there is a strong presumption that it properly exercised that discretion. ' "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears." ' [Citation.]" (*People v. Davis* (1995) 10 Cal.4th 463, 524 (*Davis*).)

Defendant moved for a new trial on multiple grounds. The only grounds he revisits on appeal under his "motion for new trial" heading are that (1) the trial court abdicated its duty to reweigh the victim's credibility, and (2) the trial court failed to make adequate inquiry as to whether any of his jurors saw him handcuffed and arrested outside the courthouse by bail bondsmen

*Credibility*

Defendant's motion argued the jury's finding of forcible rape in the second encounter (Count 8) was contrary to the evidence as to two elements of section 261, subdivision (a)(2) -- lack of consent and force. He argued his testimony on consent was believable, and the victim's testimony was not. No witness corroborated her testimony that she screamed, and she admitted she was unable to recall everything due to intoxication. As to force, defendant incorrectly asserted the jury acquitted him on Count 7 -- forcible rape for the first encounter -- and he considered the evidence stronger for the first encounter such that the evidence was insufficient for the second encounter. However, the jury did not acquit him; it deadlocked on Count 7. Defendant's motion also argued, without explanation, the evidence was insufficient on Counts 3, 4, and 6.

In denying the motion for new trial, the court stated, "certainly this is a case where it uniquely required the jury to listen to both sides. The defendant had an opportunity and did testify. The victim had an opportunity; she testified. It is really a decision of who is telling the truth here. There was certainly sufficient evidence, if you wanted to believe the victim, that the offense occurred and that's what the jury ultimately decided. [¶] So

21

it's not up to the Court to weigh the credibility of the witnesses unless there is some egregious mistake that was made here, and there was simply a matter of the jury deciding they believed one side as opposed to the other. So it is not a basis for granting a new trial." After the trial court addressed each ground in the motion, defense counsel asked if the court had addressed insufficiency of the evidence. The court replied, "Well, I think it was covered by the point with regard to the credibility of evidence here or the credibility of the witness. The jurors weighed the credibility of the witness. They decided who they felt was telling the truth. And that's something uniquely that the jury is equipped to do. [¶] So the Court is going to deny that motion based upon that as well."

On appeal, defendant claims the trial court abdicated its responsibility to reweigh the evidence independently. (§ 1181, subparagraph (6) [trial court may grant new trial "[w]hen the verdict or finding is contrary to law or evidence]; *People v. Robarge* (1953) 41 Cal.2d 628, 633 (*Robarge*) [trial court should decide whether or not, in its opinion, there is sufficient credible evidence].)

*Robarge* stated: "While it is the exclusive province of the jury to find the facts, it is the duty of the trial court to see that this function is intelligently and justly performed, and in the exercise of its supervisory power over the verdict, the court, on motion for a new trial, should consider the probative force of the evidence and satisfy itself that the evidence as a whole is sufficient to sustain the verdict. [Citations.] It has been stated that a defendant is entitled to two decisions on the evidence, one by the jury and the other by the court on motion for a new trial. [Citations.] This does not mean, however, that the court should disregard the verdict or that it should decide what result it would have reached if the case had been tried without a jury, but instead that it should consider the proper weight to be accorded to the evidence and then decide whether or not, in its opinion, there is sufficient credible evidence to support the verdict. [Citations.]" (*Robarge, supra*, 41 Cal.2d at p. 633.) In ruling on a motion for a new trial, "the trial court must weigh the evidence independently. [Citation.] It is, however, guided by a

22

presumption in favor of the correctness of the verdict and proceedings supporting it. [Citation.]"  (*Davis, supra*, 10 Cal.4th at pp. 523-524.)

*Robarge* held the trial court failed to give the defendant its independent conclusion as to the sufficiency of credible evidence to support the verdict, where the court stated it adhered to the rule that the jurors are the sole judges of credibility "even though the Court disbelieves what the witnesses may have said" and it was " 'awfully hard for the Court . . . to believe' " the sole witness who identified the defendant as the perpetrator. (*Robarge, supra*, 41 Cal.2d at pp. 633-634.)

*Davis, supra*, 10 Cal.4th 463, held the trial court did not abuse its discretion where it made some statements about the evidence supporting the *jury*'s findings but also expressly stated the trial court's own view that there was strong evidence of premeditation and deliberation, evidence of planning and motive, and evidence of lack of consent to kidnapping.  (*Id*. at pp. 523-524.)

Here, unlike *Robarge*, the trial court did not state it disbelieved the victim.  Unlike *Davis*, the trial court here did not expressly state it believed the victim.  Nevertheless, in context it is clear that, based on its own review, the judge concluded there was evidence of sufficient credibility to support the verdicts.  The judge confirmed his appropriate deference to the jury's findings and was satisfied that the evidence sufficed to sustain the findings.

Defendant fails to show the "manifest and unmistakable abuse of discretion" required for reversal.  (*Davis*, *supra*, 10 Cal.44th at p. 524.)

### *Arrest by Bail Bondsmen*

As defendant was leaving the court one day before his jury began deliberations, his bail bondsman confronted him outside the courthouse, and handcuffed and arrested him.  The matter was brought to the trial court's attention.  The court stated on the record that none of defendant's jurors were there, only perhaps some of Weldon's jurors, and the

23

court would not make any inquiry because the incident did not involve Weldon. Weldon suggested his jury be instructed. The court disagreed. Defendant did not request an inquiry at that time but, with the court's assent, reserved the right to revisit the matter if he later discovered something prejudicial.

After the verdicts, defendant raised the matter in his motion for new trial. Defendant submitted a declaration from his investigator, who attested he spoke with a courtroom spectator, Denrik Robertson, who said he and some of the jurors saw the arrest and handcuffing by bail enforcement officers; he was "one hundred percent sure" more than one juror saw it; and in particular he recalled an older female juror with salt-and-pepper hair who saw it.

In denying the motion for new trial, the court stated, "[t]hat was certainly unfortunate, but again, there is no evidence here that any juror saw that or was in any way influenced by it. Obviously the other jury, the Weldon jury, wasn't influenced by it and there is nothing here to indicate that the Parker juror[s] even observed. There is no evidence at all that would suggest that it in any way influenced the jurors' verdict."

The trial court was correct. The investigator's declaration was insufficient on its face, because it merely recounted hearsay remarks of a courtroom spectator about whom nothing but his apparent name was known. Defendant's implication that he could not get a declaration from a juror does not explain his failure to present a declaration from the spectator. Aside from that dispositive hearsay defect, there is no evidence whatsoever that the woman with the salt-and-pepper hair was on defendant's jury. Defendant asks us to assume she was on his jury, because the only courtroom proceedings of interest to a spectator that afternoon were jury arguments in defendant's case, since Weldon's jury was already deliberating. Defendant acknowledges his jury was released earlier than Weldon's jury, but he notes it was only by about three minutes.

24

Defendant presented no evidence supporting a new trial. He argues the trial court, at a minimum, should have conducted an inquiry of the jurors after trial. But defendant neither requested an inquiry nor presented anything sufficient to trigger an inquiry.

We conclude defendant fails to show the trial court abused its discretion in denying the motion for new trial.

## VI

### *Cumulative Effect*

In response to defendant's claim that the cumulative effect of error deprived him of a fair trial, we have reviewed all claims and conclude there was no cumulative error warranting reversal of the judgment.

### DISPOSITION

The judgment is affirmed.


       HULL       , J.


We concur:


     RAYE      , P. J.


     NICHOLSON   , J.