Filed 6/30/16  P. v. Johnson CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B259882 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA055727) |
| v. | |
| TIMOTHY JERODE JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Kathleen Blanchard, Judge.  Affirmed as modified.

David Y. Stanley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey, Supervising Deputy Attorney General, and Robert M. Snider, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Timothy Jerode Johnson (defendant) was convicted of murder and two counts of robbery, and sentenced to two terms of life without possibility of parole. On appeal, he argues that the trial court erred in giving CALJIC No. 2.11.5, in doubling his sentence of life without possibility of parole under the Three Strikes law (Pen. Code, §§ 667, subds. (b)-(j) & 1170.12, subds. (a)-(d))[1], in imposing a parole revocation fine, and in noting on the abstract of judgment that the stayed sentences for the robbery counts were to run consecutively. Defendant's last two arguments have merit; his first two do not. We accordingly affirm his conviction and sentence, but order that the judgment be modified to correct errors in the abstract of judgment.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

In March 2012, defendant's girlfriend drove him to a strip mall in Lancaster, California, so he could rob a computer store in that mall. She was to be his getaway driver.

As she waited in the parking lot, defendant entered a computer store called E-Chaps. When he entered the store, he pulled a ski mask down over his face and trained a gun on the store's owner and one of the owner's friends. He announced, "This is a robbery" and ordered both men to the floor. The friend complied; the store owner argued with defendant. Defendant warned that he would shoot the owner if he did not drop to the floor. When the owner still did not comply, defendant shot him twice; said, "You didn't think I'd shoot you, did you?"; and shot him two more times. Defendant took the friend's car keys and cell phone, and told him, "Now I have to kill you, too. I can't leave a witness." However, while defendant was busy placing laptop computers into his backpack and suitcase, the friend dashed for the front door and got away.

Defendant ran back to his girlfriend's waiting car, and yelled for her to "drive." They sped away.

---

1       All further statutory references are to the Penal Code unless otherwise indicated.

One of the patrons of a nearby Denny's restaurant took down the license plate number of the girlfriend's car. Police stopped her car within hours, and she admitted she was with defendant but claimed not to know about the robbery beforehand. A search of defendant's house turned up a wallet containing items in the name of the store owner, nine laptop computers with E-Chaps work orders, and a pair of shoes with bloodstains. Before defendant was arrested, he and an ex-girlfriend saw a television news report about the robbery and seeking his whereabouts; defendant told her he had "messed up" and "didn't mean to."

The store owner died from his gunshot wounds.

## II.    Procedural Background

The People charged defendant and his girlfriend with (1) murder of the store owner (§ 187, subd. (a)), (2) robbery of the store owner (§ 211), and (3) robbery of the friend (*ibid.*). The People further alleged that the murder warranted a sentence of death or life without possibility of parole because it occurred during a robbery (§ 190.2, subd. (a)(17)). As to defendant, the People also alleged that he personally and intentionally discharged a firearm (§ 12022.53, subd. (d)), and that his 2008 robbery conviction was a prior "strike" within the meaning of the Three Strikes law and that he served a prior prison term for that conviction (§ 667.5, subd. (b)).

The girlfriend pled to a single count of voluntary manslaughter and was sentenced to 21 years in state prison.

Defendant proceeded to trial. At trial, the girlfriend testified for the People, discussed her plea bargain, and was cross-examined on how that bargain resulted in a sentence substantially better than the sentence of life without possibility of parole she was initially facing. Defendant testified that the girlfriend and another man named "D" came to him the day of the robbery and asked him to hold stolen laptop computers. The jury convicted defendant of all counts and found the firearm enhancement true. Defendant waived his right to a jury trial on his prior conviction, and the trial court found it to be true.

The trial court imposed a sentence of life without possibility of parole on the murder count and doubled it under the Three Strikes law. The court also imposed a 35-year sentence on each robbery count—10 years for the robbery (that is, five years doubled due to the prior strike) plus 25 years for personal discharge of a firearm. The court stayed each robbery sentence under section 654 and did not orally state whether those sentences were to run consecutively or concurrently to the murder sentence.

Defendant timely filed an appeal.

## DISCUSSION

### I. Instructional Error

The trial court instructed the jury that defendant's girlfriend was an accomplice "as a matter of law," and further instructed the jury that an accomplice's testimony must be "corroborated by other evidence" and "should be viewed with caution" The court further instructed the jurors, as set forth in CALJIC No. 2.20, that they "are the sole judges of the believability of a witness," and that "[i]n determining the believability of a witness, [they] may consider anything that has a tendency reasonably to prove or disprove the truthfulness of the testimony of the witness, including . . . [¶] . . . [¶] [t]he existence or nonexistence of a bias, interest, or other motive." The trial court also gave CALJIC No. 2.11.5: "There has been evidence in this case indicating that a person other than a defendant was or may have been involved in the crime for which that defendant is on trial. There may be many reasons why that person is not here on trial. Therefore, do not speculate or guess as to why the other person is not being prosecuted in this trial or whether she has been or will be prosecuted. Your sole duty is to decide whether the People have proved the guilt of the defendant on trial."

Defendant argues that his girlfriend was the only other person who "may have been involved in the [charged] crime[s]," and that CALJIC No. 2.11.5's command "not [to] speculate or guess as to why [she] is not being prosecuted in this trial or whether she has been or will be prosecuted" effectively precluded the jury, in assessing her believability, from considering how she might be biased or interested to lie for the

prosecution. Because this argument raises a question of instructional error, our review is de novo. (*People v. Fiore* (2014) 227 Cal.App.4th 1362, 1378 (*Fiore*).)

The argument defendant raises—that CALJIC No. 2.11.5 somehow negates part of the general credibility instruction set forth in CALJIC No. 2.20—has been rejected time and again by our Supreme Court: "'The purpose of [CALJIC No. 2.11.5] is to discourage the jury from irrelevant speculation about the prosecution's reason for not jointly prosecuting all those shown by the evidence to have participated in the perpetration of the charged offenses, and also to discourage speculation about the eventual fates of unjoined perpetrators. [Citation.] When the instruction is given with the full panoply of witness credibility and accomplice instructions . . . a reasonable juror will understand that although the separate prosecution or nonprosecution of coparticipants, and the reasons therefor, may not be considered [on] the issue of the charged defendant's guilt, a plea bargain or grant of immunity may be considered as evidence of interest or bias in assessing the credibility of prosecution witnesses. Although [CALJIC No. 2.11.5] should have been clarified or omitted [citations], we cannot agree that giving it amounted to error.'" (*People v. O'Malley* (2016) 62 Cal.4th 944, 986, quoting *People v. Price* (1991) 1 Cal.4th 324, 446; see also *People v. Valdez* (2012) 55 Cal.4th 82, 148-149; *People v. Brasure* (2008) 42 Cal.4th 1037, 1055; *People v. Lawley* (2002) 27 Cal.4th 102, 162-163; *People v. Cain* (1995) 10 Cal.4th 1, 34-35.) More to the point, giving CALJIC No. 2.11.5 is not error even where, as here, the instruction refers to an accomplice witness who has entered into a plea agreement and is testifying for the People. (*People v. Sully* (1991) 53 Cal.3d 1195, 1218-1219; *People v. Belmontes* (1988) 45 Cal.3d 744, 782-783, overruled on other grounds by *People v. Cortez* (2016) 63 Cal.4th 101.)

Defendant points out that some of the cases have declared that giving CALJIC No. 2.11.5 as to a testifying witness is "error." (*People v. Carrera* (1989) 49 Cal.3d 291, 312-313; *People v. Williams* (1988) 45 Cal.3d 1268, 1313; *People v. Williams* (1997) 16 Cal.4th 153, 226-227.) Each of these cases is arguably distinguishable because they reviewed an earlier version of CALJIC No. 2.11.5. That earlier version told jurors "not [to] *discuss or give any consideration* as to why the other person is not being prosecuted

5

in this trial or whether he or she has been or will be prosecuted" (*Carrera*, at p. 312, fn. 9, italics added); the current version tells jurors "*not [to] speculate or guess* as to why the other person is not being prosecuted in this trial or whether [he or she] has been or will be prosecuted" (CALJIC No. 2.11.5, italics added). At least one court has found the current instruction "only to prohibit idle speculation, not to prevent consideration of pertinent evidence." (*People v. Fonseca* (2003) 105 Cal.App.4th 543, 550.) But even if we overlooked the change in the instruction's language, none of the cases defendant cites found the instructional error to be prejudicial—either under *People v. Watson* (1956) 46 Cal.2d 818, 836 or *Chapman v. California* (1967) 386 U.S. 18, 24. (*Carrera*, at pp. 312-313; *Williams*, *supra*, 45 Cal.3d at p. 1313; *Williams*, *supra*, 16 Cal.4th at pp. 226-227; see also *Fonseca*, at p. 549 ["the Supreme Court has held that, in every case where the jury receives all otherwise appropriate general instructions regarding witness credibility, there can be no prejudice from jury instruction pursuant to CALJIC No. 2.11.5"].)

## II.     Sentencing Errors

### A.     *Doubling the life without possibility of parole sentence*

Under the Three Strikes law (law), a court is to double the sentence otherwise mandated for a "serious" or "violent" felony if it is a defendant's second such conviction. (§§ 667, subd. (e)(1) & 1170.12, subd. (c)(1).) Specifically, the law provides: "If a defendant has one prior serious and/or violent felony conviction . . . that has been pled and proved, the *determinate term or minimum term for an indeterminate term* shall be twice the term otherwise provided as punishment for the current felony conviction." (*Ibid.*, italics added.)

How does this doubling provision apply when the "term otherwise provided as punishment" is life without possibility of parole (LWOP)? This is a question of statutory interpretation, and thus one we review de novo. (*Fiore*, *supra*, 227 Cal.App.4th at p. 1378.)

Our Supreme Court has applied this provision to sentences of life *with* the possibility of parole, holding that the "minimum term for an indeterminate term" in that

6

context is the minimum parole term—not the minimum term of "life." (*People v. Jefferson* (1999) 21 Cal.4th 86, 93-99.) This precedent is not directly applicable where, as here, the sentence is life *without* the possibility of parole because there is no minimum parole term.

There is an interpretive void, and the Court of Appeal has divided over how to fill it. In *People v. Hardy* (1999) 73 Cal.App.4th 1429 (*Hardy*), this Division of the Second District held that the law did not "expressly describe[] how a second strike defendant is to be sentenced if the current offense is one for which a defendant with no prior strike would receive a sentence of life without possibility of parole," but held that the "stated purpose" of the law as well as section 669—which contemplates the imposition of multiple, consecutive LWOP sentences—meant that the law also requires that LWOP sentences be doubled. (*Id.* at pp. 1433-1434.) Two other Districts have subsequently disagreed. (*People v. Smithson* (2000) 79 Cal.App.4th 480 (*Smithson*); *People v. Mason* (2014) 232 Cal.App.4th 355 (*Mason*).) *Smithson* agreed with *Hardy* that the law does not speak to what to do with an LWOP sentence because such a sentence "is an indeterminate sentence *without* a minimum term," but reasoned that this omission was intentional and that *Hardy* constitutes an unwarranted extension of the law. (*Smithson*, at pp. 503-504.) *Mason* recognized that "life" was the "effective minimum" of any LWOP sentence, but reasoned that the law only requires the doubling (or, in *Mason*'s case, tripling) of a minimum *parole* term. (*Mason*, at pp. 367-368; see also *People v. Coyle* (2009) 178 Cal.App.4th 209, 219 [reaching same result, with respect to tripling].)

Defendant urges us to reject our prior decision in *Hardy* and instead to follow *Smithson* and *Mason*. To be sure, *Smithson* and *Mason* have some persuasive force. But *Hardy* is the law of this Division. Under "[t]he doctrine of stare decisis . . .[,] a court usually should follow prior judicial precedent even if the current court might have decided the issue differently if it had been the first to consider it," especially when "the issue is one of statutory construction." (*Bourhis v. Lord* (2013) 56 Cal.4th 320, 327.) Although we can depart from prior precedent "for good reason" (*ibid.*), we are not

persuaded that *Smithson'*s and *Mason'*s rationales cast enough doubt on *Hardy's* reasoning that we are faced with a sufficiently good reason to abandon *Hardy*.

We accordingly adhere to *Hardy*, and reject defendant's challenge because the trial court followed *Hardy*.

### B.    *Parole revocation fine*

As a general rule, a trial court must impose a $10,000 parole revocation fine at the time of sentencing.  (§ 1202.45, subd. (a).)  However, that rule does not apply where parole is an impossibility because the defendant has been sentenced to life without the possibility of parole.  (*People v. Oganesyan* (1999) 70 Cal.App.4th 1178, 1182.)  As a result, the parole revocation fine imposed in this case must be vacated.

### C.    *Consecutive stayed sentences*

If a trial court does not determine whether a defendant's sentence on subsequent offenses is to run concurrently or consecutively, the sentences are presumed to run concurrently.  (§ 669, subd. (b); *People v. Downey* (2000) 82 Cal.App.4th 899, 915.)  In this case, the trial court did not in its oral pronouncement state whether the two robbery sentences were to run consecutively or concurrently either to the murder sentence or to each other.  As a result, they are deemed to run concurrently and the abstract of judgment, which states that consecutive terms were imposed, must be corrected.

**DISPOSITION**

The judgment is ordered modified by vacating the parole revocation fine and imposing concurrent rather than consecutive sentences for the two robbery counts. The clerk of the superior court is directed to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
HOFFSTADT

We concur:


_____, P.J.
BOREN


_____, J.
ASHMANN-GERST